OPINION OF THE COURT
John J. Toomey, J.
The People have moved for an order pursuant to CPLR 2221 permitting reargument and renewal of their prior motion to compel defendant to provide a buccal swab. Defendant has cross-moved for an order granting him reargument of that same application.
Defendant is charged in this indictment with one count of burglary in the second degree. He had previously been convicted of that charge before this court (Efman, J.) after a jury trial. Upon appeal, his conviction was reversed and a new trial ordered. In its decision, the Appellate Division, Second Department found, inter alia, that the County Court had “erred in granting the People’s motion to compel the defendant to provide *548 a buccal swab sample for DNA analysis” (People v Oliver, 92 AD3d 900, 901 [2012]). The Court found that the People had failed to establish probable cause to believe the defendant committed the burglary at issue. The Court went on to note that “[t]he Assistant District Attorney’s affidavit submitted in support of the motion asserted, in a conclusory fashion, that the defendant had injured himself during the commission of the burglary and that blood was recovered at the crime scene without providing further detail or the source of this information” (People v Oliver at 901).
In support of their prior motion the People alleged that on October 4, 2007, at approximately 8:00 p.m., defendant broke into a dwelling at 8 Grammercy Place, Huntington, New York. According to the People, a side window to the dwelling was broken and used by defendant to gain access to the premises. While entering the home through the broken window, the People contend that defendant cut himself on that window and left blood behind. A sample of the blood found on the window was taken and preserved to be tested at the Suffolk County Crime Lab. On October 11, 2007, the lab issued a report which confirmed that the substance found on the window was, in fact, blood. In addition, the lab developed a DNA profile from the blood that was forwarded to the CODIS database.[1] On July 21, 2008, the Office of Forensic Services of the New York State Division of Criminal Justice Services informed the Suffolk County Crime Lab that the DNA profile sent to CODIS matched that of Clarence Oliver, the defendant herein. By virtue of the fact that defendant was a convicted offender, his DNA profile was part of the CODIS database. According to the People, a buccal swab was requested so that the Suffolk County Crime Lab could compare the DNA from defendant as found from the buccal swab to that of the blood found on the window at the location of the burglary.
*549 In opposition to the People’s original motion to this court, defendant raised several arguments including one that he raises again in his present cross motion. Defendant asserts that the People’s previous application should be characterized as a motion to renew which is governed by CPLR 2221 (e). According to defendant, a motion to renew must be supported by facts not previously known to the movant at the time of the original motion and a reasonable justification for the failure to provide such facts at that time. Defendant argued then and raises again in this cross motion that where a party fails to offer a reasonable excuse as to why it did not present the alleged new facts on the prior motion, as defendant alleged the People failed to do with that motion, leave to renew should be denied.
Turning first to defendant’s cross motion, the court again finds no merit to defendant’s position. The Appellate Division, in overturning defendant’s conviction, found, inter alia, that the People were not entitled to the buccal swab, holding that “the People failed to establish probable cause to believe the defendant committed the burglary at issue” (People v Oliver at 901). Consequently, that Court ordered a new trial. It did not dismiss the indictment and did not preclude the People from attempting to establish, on remand, the probable cause necessary to entitle the People to a buccal swab. Had the Appellate Division intended that the People be precluded from any further attempts to establish probable cause, it would have so directed and dismissed the indictment since the evidence found from the buccal swab is what connected defendant to this burglary. But that is not what the Appellate Division said. In fact, it ordered a new trial and an opportunity to permit the People to attempt to satisfy the court that probable cause for a buccal swab could be established.
The court further finds that the People are not precluded from attempting to establish, by their present motion, the probable cause necessary to entitle them to take a buccal swab from defendant.
In their initial application to the court, the People demonstrated that samples of blood found on the broken window were taken and preserved to be tested by the Suffolk County Crime Lab. They established that a DNA profile was developed from that blood and forwarded to the CODIS database. On July 21, 2008, the Office of Forensic Services of the New York State Division of Criminal Justice Services informed the Suffolk County Crime Lab that the DNA profile sent to CODIS matched *550 the DNA profile of Clarence Oliver. In support of their motion, the People attached a copy of the report from the Suffolk County Crime Lab as well as an affidavit from the New York State Division of Criminal Justice Services in which the match between the DNA recovered from the blood at the crime scene was matched to the DNA on file with CODIS and identified as that of Clarence Oliver. As a convicted offender, defendant’s DNA profile was on file in the CODIS database.
Based upon that information, it was clear that the People established probable cause to believe that defendant had committed the burglary in question (see People v Afrika, 13 AD3d 1218 [2004]). In Afrika the Court held that finding a DNA match between a previously-indexed blood sample from defendant and a semen sample taken from a sodomy victim provided probable cause for an order authorizing the withdrawal of a new blood sample from defendant. In this case, the People have the blood uncovered at the crime scene matching a previously-indexed DNA sample of defendant’s from a prior case and establishing probable cause.
In their original application to this court, this court concluded that although the People had established probable cause for the taking of the buccal swab, they failed to establish the need for the taking of the sample. The People had established that a DNA analysis of the blood found at the crime scene matched that of the DNA on file of defendant. The court reasoned that the People had the match that they needed and denied their request upon the ground that the evidence was unnecessary.
CPL 240.40 (2) (b) (v) provides that
“[u]pon motion of the prosecutor, and subject to constitutional limitation, the court in which an indictment ... is pending . . . may order the defendant to provide non-testimonial evidence [requiring] the defendant to . . .
“[p]ermit the taking of samples of blood, hair or other materials from his body in a manner not involving an unreasonable intrusion thereof or a risk of serious physical injury . . . .”
Although this section does not explicitly require a showing of probable cause before the People’s request for a buccal swab can be granted, it has been held that the requirement in the statute that this right is subject to “constitutional limitation” requires that the People independently establish probable cause (see People v Afrika; People v Oliver).
*551 In Matter of Abe A. (56 NY2d 288 [1982]), the Court of Appeals announced for the first time the standard to be used before a suspect can be required to provide a sample of his blood in furtherance of an investigation of a crime. The Court held that a court order to obtain a blood sample may issue if the People establish (1) probable cause to believe that the suspect has committed the crime, (2) a clear indication that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable.
In establishing these criteria, the Court of Appeals acknowledged that unlike many states, New York did not have a statute authorizing courts to compel a “person whose status is no more than that of a suspect to supply nontestimonial evidence” (Matter of Abe A. at 293). The Court also noted that absent such express statutory authorization, it did not favor “importing such power by implication” (Matter of Abe A. at 294). However, the Court found that while there was no explicit statute in New York permitting such orders, “equivalent judicial authority may be exercised under a court’s power to issue a search warrant” (Matter of Abe A. at 294). The Court of Appeals noted that under CPL 690.05 (2) a criminal court could order “ ‘a search . . . of a designated person’ in order to seize specified property which, as defined in CPL 690.10 (subd 4) ‘[constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense’ ” (Matter of Abe A. at 294). The Court then went on to note that “[i]t requires no reach then to hold that the blood samples which are the target of the order in the proceeding before us now come well within these provisions” (Matter of Abe A. at 294).
Because the Court of Appeals has likened an application for an order authorizing the taking of nontestimonial evidence, such as in the case before the court, to an application for a search warrant,[2] this court has no difficulty rejecting defendant’s arguments in opposition to the present application. Defendant has argued on his prior motion and now again in support of his present cross motion that the People should be limited to “one bite of the apple,” so to speak, in attempting to obtain court authorization for the buccal swab. Defendant contends that under the standards set forth in the CPLR for *552 motions to renew, the People must establish “a reasonable excuse as to why [they] did not present the alleged new facts on the prior motion . . . (affirmation in support of cross motion If 12).
However, given the basis upon which the Court of Appeals first authorized the taking of nontestimonial evidence, defendant’s arguments are unavailing. The Court in Matter of Abe A. likened the application for nontestimonial evidence, such as a buccal swab, to an application for a search warrant. Indeed, despite the Court’s reluctance to permit the taking of such evidence in the absence of statutory authorization for it, it found the necessary support in CPL article 690, covering the issuance of search warrants. In connection with this, it must be noted that the Court of Appeals has specifically rejected the argument defendant makes, which would treat a court’s denial of a buccal swab application as, in effect, the “law of the case.” “[R]ulings on a search warrant application are not the type of determinations to which the law of the case doctrine are intended to apply, in any event and even if a prior probable cause determination had been previously made” (People v Bilsky, 95 NY2d 172, 176 [2000]). In fact, in Bilsky (at 176-177), the Court found that “constitutional principles do not restrain law enforcement officials from seeking successive authorizations before different Magistrates, where warranted when one Magistrate may initially decline to issue a search warrant for a myriad of reasons on or off the record, whatever that may be in such matters” (citing United States v Pace, 898 F2d 1218, 1230 [1990]). As the Court of Appeals noted in quoting the Seventh Circuit Court of Appeals in United States v Pace, the important questions, “from a Fourth Amendment standpoint, are whether the magistrate really was ‘neutral and detached,’ and whether probable cause actually existed, not how many magistrates the government applied to before finally obtaining a warrant” (at 1230-1231, relying on Franks v Delaware, 438 US 154, 171-172 [1978]).
For these same reasons, this court does not find that the People are precluded from making their present application. The determination which initially denied the People’s motion was not the law of the case. This court carefully considered the People’s application and found that while the People had established probable cause, their application was deficient in a certain respect, specifically, information as to whether the buccal swab was necessary in light of the CODIS match. In their present application, the People have addressed that deficiency, *553 much in the same way that any law enforcement agency, having been denied their application for a search warrant, might return with an additional affidavit or additional information to satisfy the issuing magistrate. The People have noted in support of their motion that there are “substantial impediments” to the introduction of the CODIS match at trial. Indeed, the People point out that in reversing defendant’s prior conviction after trial, the Appellate Division found that the People had improperly referred to the CODIS match at trial, resulting in a violation of the defendant’s right to confront the witnesses against him (People v Oliver; see also Crawford v Washington, 541 US 36 [2004]). The People further note that they lack access to the nonhearsay predicates needed to introduce the CODIS match since the blood sample that was analyzed and made a part of the CODIS database was taken over 12 years ago. Finally, the People also note that by allowing the buccal swab to be taken and a DNA profile to be established from that evidence, the issue of how defendant’s DNA became part of the state’s criminal DNA database will be eliminated and ultimately enure to defendant’s benefit at trial.
Accordingly, the People’s motion is granted. The court is satisfied that the People have established probable cause to believe defendant committed the burglary in question, that relevant evidence will be found and that the method to be used, a swab of defendant’s cheek inside defendant’s mouth, is safe and reliable. The court will allow the buccal swab to be taken.
The People are directed to submit an order for such a buccal swab on notice to defendant.

. According to the Federal Bureau of Investigation website,
“CODIS is the acronym for the ‘Combined DNA Index System’ and is the generic term used to describe the FBI’s program of support for criminal justice DNA databases as well as the software used to run these databases. The National DNA Index System or NDIS is considered one part of CODIS, the national level, containing the DNA profiles contributed by federal, state, and local participating forensic laboratories” (Frequently Asked Questions [FAQsJ on the CODIS Program and the National DNA Index System, available at http://www.fbi.gov/about-us/lab/ biometric-analysis/codis/codis-and-ndis-fact-sheet).

. Indeed, in Matter of Abe A (at 294), the Court noted that “[n]omenclature notwithstanding, if the application [for nontestimonial evidence] and the relief comport with all the requisites of a search warrant, it may he taken for what it is.”